IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NATIONAL HERITAGE FOUNDATION ) 
INC., )
 )
           Appellant, )
 )
      v. )      No. 1:12-cv-1329 (AJT/JFA)
 )
JOHN BEHRMANN, *et. al* )
 )
           Appellees. )
_____ )

## MEMORANDUM OPINION

National Heritage Foundation, Inc. (hereinafter "NHF" or "appellant") appeals the

August 27, 2012, decision of the United States Bankruptcy Court for the Eastern District of

Virginia [Doc. No. 1]. In that decision the Bankruptcy Court held that certain non-debtor release

provisions of NHF's Fourth Amended Plan of Reorganization (the "Reorganization Plan" or the

"Plan") were not warranted and severed those provisions from the Reorganization Plan. On

appeal, NHF raises three issues:

> 1. Whether, on remand, the Bankruptcy Court overstepped the Fourth Circuit's
> mandate;
>
> 2. Whether the Bankruptcy Court erroneously concluded that the rejected releases
> were not essential to NFH's reorganizations, and
>
> 3. Whether the Bankruptcy Court otherwise "misconstrued undisputed record
> evidence and otherwise misapplied the law in rejecting the Releases. . . ."

See Appellant Br. at 1.

After reviewing the record, the Court finds and concludes that (1) the Bankruptcy Court

did not exceed the mandate on remand; (2) the findings of fact that formed the factual basis for

its decision were not clearly erroneous and are, in fact, fully supported by the record; and (3)

applying the applicable law *de novo* to the factual findings of the Bankruptcy Court, the Release Provisions were not warranted as part of the Reorganization Plan.[1] The decision of the Bankruptcy Court is therefore AFFIRMED.

## I. BACKGROUND

NHF is a Georgia non-profit public charity, exempt from taxation under Internal Revenue Code § 501(c)(3). Third Am. Disc. St. at 5. Members of the Houk family control all of NHF's officer positions and all but one of its board seats. Confirmation Hr'g Tr. I at 42. NHF's bylaws provide for indemnification of its directors and officers to the extent permitted by the Georgia Non-Profit Corporation Code. Before its bankruptcy filing, NHF managed net assets with a book value of $152 million and had 17 full-time employees. *Id.* at 46, 54; Third Am. Discl. St. at 5. Relevant to this appeal, NHF administered and maintained what are called, under the applicable tax laws, Donor Advised Funds ("DAFs"). Third Am. Discl. St. at 5. DAFs are funds owned and controlled by a sponsoring charitable organization, in this case NHF, for the purpose of receiving charitable contributions from a particular donor or group of donors. *See* 26 U.S.C. § 4966(d)(2). When a donor contributes to a particular DAF, the donor must relinquish all right, title, and interest in the assets, in exchange for a 100% dollar for dollar tax deduction at the time the donation is made. *Id.* The donor, however, may make non-binding recommendations with respect to the distribution or investment of the amounts held in the DAF. *Id.* Prior to its Chapter 11 filing, NHF sponsored and maintained DAFs from more than 9,000 donors (collectively "the Donors"). Confirmation Hr'g Tr. I. at 96. NHF also entered into approximately 114 charitable

---

[1] The Court also concludes that the Bankruptcy Court correctly stated the applicable law and that its decision to exclude the Release Provisions based on the application of that law to the facts, as it determined them, was not an abuse of discretion. *See* n.4 *infra* as to the standard of review applied to this appeal.

gift annuity contracts totaling approximately $12 to $15 million in total annuity obligations and, at the time of the Chapter 11 filing, owed approximately $1.64 million in annual annuity payments to the annuitants and their spouses (collectively the "Annuitants"). *In re Nat'l Heritage Found., Inc.,* 478 B.R. 216, 219-20 (Bankr. E.D. Va. 2012).

On January 24, 2009, NHF filed for Chapter 11 Bankruptcy after experiencing difficulties in posting an appeal bond to prevent execution upon a $ 6 million Texas state court judgment (the "Mancillas Judgment"). *Id.* at 220. Hundreds of claims were filed, nearly all of which were either claims by Donors or claims by Annuitants. [2] Among the claimants were the appellees John R. and Nancy Behrman and their affiliated foundation, The Highbourne Foundation and Dolores Anderson and her foundation, The Dodie Anderson Foundation (collectively "the appellees"). *Id.* at 220-21.[3]

On October 13, 2009, NHF filed the Reorganization Plan, which included certain nondebtor release provisions and injunction provisions (collectively the "Release Provisions"), as well as exculpation provisions. *See Behrmann v. Nat'l Heritage Found.,* 663 F.3d 704, 707 (4th Cir. 2011). In essence, the Release Provisions prevent claimants from asserting any claims, other than those relating to the administration of the Reorganization Plan, against NHF, the

---

[2] Overall, 343 Proofs of Claim were filed, totaling approximately $51.5 million, which included one secured bank claim in the amount of approximately $7.5 million, the Mancillas' judgment claim in the amount of approximately $6 million, claims filed by Donors and claims filed by Annuitants. *See In re Nat'l Heritage Found., Inc.,* 478 B.R. at 219-20.

[3] NFH objected to all of the Donor Claims on the grounds that the Donors were not creditors; and the Bankruptcy Court sustained some but not all of NFH's objections to the Donor Claims. NHF entered into a settlement with the Behrmanns before an adjudication of NHF's objections to their claim and the Bankruptcy Court disallowed Anderson's claim as untimely. *Id.* at 219-220. The Court was advised during oral argument that all of the other Donors' claims filed in the Bankruptcy Court and objected to by NHF were settled. Bankr. Appeal Hr'g Tr. at 86.

3

Official Committee of Unsecured Creditors, and certain other persons closely connected with NHF or the Committee, such as NHF's officers and directors. *Id.* at 707.

The Bankruptcy Court conducted a confirmation hearing with respect to the Reorganization Plan on October 15, 2009. The only witness at the confirmation hearing was Janet Ridgely, a member of the Houk family. She testified that the Release Provisions were essential to a successful reorganization. Specifically, Ridgley asserted that (1) the Reorganization Plan and NHF's bylaws required the debtor to indemnify the officers and directors for liabilities arising out of lawsuits filed against them related to acts taken in their official capacities; (2) the officers and directors were concerned about the possibility of litigation against them related to such acts; (3) NHF's officers and directors might be unwilling to continue to serve after confirmation of NHF's proposed plan of reorganization absent the Release Provisions; and (4) retaining the officers and directors was essential to NHF's success as a reorganized debtor. Confirmation Hr'g Tr. I at 60-64; *see also Behrmann,* 663 F.3d at 707-08; *In re Nat'l Heritage Found.,* 478 B.R. at 222-23. Ridgely also testified that none of the officers had come forward to say that they would not serve absent the Release Provisions. Confirmation Hr'g Tr. I at 63.

Over the appellees' objections, the Bankruptcy Court entered a Confirmation Order on October 16, 2009, that approved and adopted, in large measure, the proposed Release Provisions as part of the Reorganization Plan. The Confirmation Order provides, in pertinent part:

> *Releases and Discharges.* The releases, exculpation, and injunction provisions described in Section 7.10, 7.20, and 7.21 of the Plan are essential to the Debtor's reorganization efforts and appropriate given the Debtor's unique circumstances. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan: (i) is within the jurisdiction of the Court under 18 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers material benefit on, and is in

4

the best interest of, the Debtor, its Estates and their creditors; (v) is important to the overall objectives of the Plan to finally resolve all claims among or against the parties-in-interest in Debtor's case with respect to Debtor's organization, capitalization, operation and reorganization; and (vi) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

Reorganization Plan at 15-16.[4]

---

[4] The Release, Injunction, and Exculpation Provisions were amended in accordance with the Bankruptcy Court's rulings at the confirmation hearing and provide as follows:

> 7.19 Release. On the Effective Date, the Debtor, Reorganized Debtor, the Committee, the members of the Committee and their designated representatives in their capacity as such, any such parties' respective current (i.e., as of the Confirmation Date) officers, directors or employees, and any of such parties' successors and assigns (the "Released Parties") shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to any party in interest who has filed a claim or who was given notice of the Debtor's Bankruptcy Case (the "Releasing Parties") for any act or omission before or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the operation of the Debtor's business, except to the extent relating to the Debtor's failure to comply with its obligations under the Plan. Notwithstanding the foregoing, nothing contained herein shall be deemed to be a release by the Debtor or Reorganized Debtor of any of the Causes of Action retained by the Debtor pursuant to the Plan, including, without limitation, the Causes of Action described on Exhibit C to the Disclosure Statement.

> 7.20 Injunction. The satisfaction, releases, and discharge pursuant to Article VII of this Plan shall also act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any claim or cause of action satisfied, released or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

> Except as provided in this Plan or as expressly approved by the Reorganized Debtor, the Releasing Parties (as defined in Section 7.19) shall be precluded and enjoined from asserting against the Reorganized Debtor, the Estate or the Reorganized Debtor's Assets, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

> 7.21 Exculpation. The Released Parties shall have no liability to any of the Releasing Parties (as defined in Section 7.19) for any act taken or omission made in connection with, or arising out of, the Bankruptcy Case, the Disclosure Statement, this Plan or the formulation, negotiation, preparation, dissemination,

Several donors appealed the Confirmation Order to this Court, which affirmed the Order of the

Bankruptcy Court. *Behrmann v. Nat'l Heritage Foundation,* 1:10-cv-40 (E.D. Va. Aug. 17,

2010). Those donors then appealed to the Fourth Circuit, which vacated the judgment and

remanded the case to the Bankruptcy Court for further proceedings, holding that the Bankruptcy

Court's factual findings were insufficient to determine on appeal whether the Release Provisions

should have been approved. *See Behrmann,* 663 F.3d at 713. Specifically, the Fourth Circuit

ruled as follows:

> Because the record does not allow us to assess- under any standard of review- whether
> NHF's circumstances entitle it to the benefit of the Release Provisions, we must vacate
> the district court's judgment and remand the case to allow the bankruptcy court—if the
> record permits it- to set forth specific factual findings supporting its conclusions."

*Id.* (emphasis added). More specifically, the Fourth Circuit "commended" to the Bankruptcy

Court the factors outlined in *Class Five Nev. Claimants v. Dow Corning (Dow Corning),* 280

F.3d 658 (6th Cir. 2002) and *In re Railworks Corp.,* 345 B.R. 529, 536 (Bankr. D. Md. 2006)

when considering whether to approve the nondebtor releases as part of the final plan of

reorganization. *Behrmann,* 663 F.3d at 712 ("We find the *Dow Corning* and *In re Railworks*

*Corp.* factors instructive and so commend them to the bankruptcy court when considering

whether to approve nondebtor releases as part of a final plan of reorganization.").

---

> implementation or the administration of this Plan, any instrument or agreement
> created or entered into in connection with this Plan, any other act taken or omitted
> to be taken in connection with, or in contemplation of, any of the restructuring or
> other transactions contemplated by this Plan, and the property to be distributed or
> otherwise transferred under this Plan; unless such person obtains the prior
> approval of the Bankruptcy Court to bring such a claim. Nothing in this Section
> 7.21 or elsewhere in this Plan shall release, discharge or exculpate any non-
> Debtor party from (a) any claim owed to the United States government or its
> agencies, including any liability arising under the Internal Revenue Code or
> criminal laws of the United States, or (b) any claim of any Claimant except as
> expressly set forth herein.

*Id.* at 27-28.

Following remand, the Bankruptcy Court held a status conference on March 6, 2012, at which time it gave the parties the option of introducing new evidence at a supplemental confirmation hearing. The parties stipulated, however, that the Bankruptcy Court could, and should, make its findings of fact and conclusions of law based on the existing record as it stood at the conclusion of the confirmation hearing held on October 15, 2009. *See* Hr'g Tr. March 6, 2012 at 3-7. Following a thorough and reasoned analysis of the *Dow Corning* and *In re Railworks* factors, the Bankruptcy Court determined that the record did not support including in the Reorganization Plan the nondebtor release provisions in Section 7.19 and the corresponding injunction provision in Section 7.20. *In re Nat'l Heritage Found.,* 478 B.R. at 232.[5] It did,

---

[5] *Dow Corning* identified the following seven factors to be considered when analyzing non debtor release provisions:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

280 F.3d at 658 (citations omitted). *In re Railworks* looked at the following factors

> (1) overwhelming approval for the plan; (2) a close connection between the causes of action against the third party and the causes of action against the debtor; (3) that the injunction is essential to the reorganization; and (4) that the plan of reorganization provides for payment of substantially all of the claims affected by the injunction.

345 B.R. at 536. The parties agree with the Bankruptcy Court's conclusion that "[t]he four-factor test employed in *Railworks...* is basically a shortened version of the seven-factor test in *Dow Corning. In re Nat'l Heritage Found.,* 478 B.R. at 227.

however, uphold the exculpation provisions in Section 7.21 and the corresponding injunction provision in Section 7.20. *Id.* at 234.

## II. STANDARD OF REVIEW

On appeal, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. This Court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Hartford Sands Inc.,* 372 F.3d 637, 639 (4th Cir. 2004); *see also* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). "In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts." *In re Phinney,* 405 B.R. 170, 175 (E.D. Va. 2009) (citing *Gilbane Bldg. Co. v. Fed. Reserve Bank,* 80 F.3d 895, 905 (4th Cir. 1996)). [6]

---

[6] There are two issues with respect to the applicable standard of review, one raised by NHF and one raised by the Fourth Circuit. First, NHF contends that because now retired Judge Mitchell, not Judge Kenny who issued the decision under review, presided over the original confirmation hearing, and Judge Kenny on remand acted solely on the basis of the written record pertaining to the original confirmation hearing, his factual findings are entitled to no deference and must be reviewed *de novo.* The Court concludes that the appropriate standard of review is the clearly erroneous standard as to factual findings. Nevertheless the Court has reviewed the record in detail and affirms the Bankruptcy Court's findings of fact under either standard.

Second, the Fourth Circuit left open whether a bankruptcy court's decision to approve or reject the Release Provisions should be viewed under a *de novo* standard, as the appellees argued before the Fourth Circuit (viewing as a legal issue whether the Reorganization Plan as approved satisfies the requirements of the Bankruptcy Code), or under an abuse of discretion standard generally applicable to the equitable powers the Bankruptcy Court was exercising, as NHF argued before the Fourth Circuit. *See Behrmann,* 663 F.3d at 708-09. The parties have not raised or briefed this issue in connection with this appeal from the Bankruptcy Court's decision on remand. Nevertheless, the Court has considered *de novo* whether the Bankruptcy Plan, as

## III. ANALYSIS

A. The Bankruptcy Court Properly Discharged its Obligations under the Fourth Circuit's Mandate

NHF first argues that the Bankruptcy Court exceeded its mandate because "[t]he Fourth Circuit did not ask the [Bankruptcy Court] to revisit the law that the Original Bankruptcy Court applied. . . ." Rather, according to NHF, the Fourth Circuit's mandate was limited to making "sufficient findings of fact that support the Releases, if the record permits[,]" and the Bankruptcy Court violated that mandate when it concluded, contrary to its original decision, that the Releases were not warranted. Appellant Br. at 15. The Court has reviewed *de novo* whether the Bankruptcy Court exceeded the Fourth Circuit's mandate and concludes that NHF's position is without merit.

In deciding to remand the case to the Bankruptcy Court, the Fourth Circuit recognized that the Bankruptcy Court, without explicitly saying so, based its decision on the *Dow Corning* factors. *Behrmann,* 663 F.3d at 712 ("It [the Bankruptcy Court] clearly considered the case in deciding whether to approve the Release Provisions."). The Fourth Circuit concluded, however, that "...the bankruptcy court's ultimate decision to grant equitable relief lacks adequate factual support." *Id.* It continued:

> Put simply, to conclude, as the bankruptcy court did, that the Release Provisions (1) were "essential" to NHF's reorganization and appropriate given NHF's "unique circumstances;" (2) were an "essential means" of implementing the confirmed plan; (3) were an "integral element" of the transactions contemplated in the Confirmed Plan; (4) conferred a "material benefit" on NHF, its bankruptcy

---

approved, satisfies the requirements of the Bankruptcy Code and affirms the decision of the Bankruptcy Court based on that *de novo* review, including the application of law to the factual findings of the Bankruptcy Court. This affirmance under that standard of review would, perforce, require affirmance under an abuse of discretion standard.

9

estate and its creditors; (5) were "important" to the plan's overall objections; and (6) were "consistent" with applicable provisions of the Bankruptcy Code, is meaningless in the absence of specific factual findings explaining why this is so. Indeed, without more, the court's conclusions could apply just as well to any number of reorganizing debtors. Because the present record does not allow us to assess—under any standard of review—whether NHF's circumstances entitle it to the benefit of the Release Provisions, we must vacate the district court's judgment and remand the case to allow the bankruptcy court—*if the record permits it*—to set forth specific factual findings supporting its conclusions.

*Behrmann,* 663 F.3d at 712-13 (emphasis added). Thus, on remand, the Bankruptcy Court was

charged with determining whether the record permitted specific findings of fact sufficient to

include the third party releases and exculpations in the Reorganization Plan. In other words, the

Bankruptcy Court was obligated to review the record and articulate, if it could, why the

extraordinary and "dramatic measure" of nondebtor release provisions was warranted based on

this record. *See Dow Corning,* 280 F.3d at 658. The Bankruptcy Court, after giving the parties

an opportunity to supplement the record, examined the record and concluded that it could not

make factual findings sufficient to warrant the inclusion of such provisions. It then acted in the

only way it could, consistent with that determination – it disallowed those provisions and severed

them from the Reorganization Plan. Accordingly, the Court finds and concludes that the

Bankruptcy Court complied with the Fourth's Circuit's mandate on remand.[7]

---

[7] The logic of NHF's argument that the Bankruptcy Court exceeded its mandate is less than clear. On the one hand, NHF concedes that the Fourth Circuit "left open the possibility that the record might not support the Releases." Appellant Reply Br. at 4. On the other hand, it appears to argue that the Bankruptcy Court was restricted to finding only those facts that supported the original decision approving the Release Provisions. *See* Appellant Br. at 24-26. Left unexplained is how the Bankruptcy Court's inability to find facts sufficient to support the Release Provisions would not necessarily result in the Bankruptcy Court's refusal to include those provisions in the Reorganization Plan. In any event, the Court agrees with the Bankruptcy Court that "[t]he phrase 'if the record permits' [in the Fourth Circuit's opinion]. . . . surely implied some discretion on the part of this Court[]" and that"[t]he [Bankruptcy] Court was not asked to blindly approve the release and exculpation provisions." Order Granting Stay, Doc. No. 1039 at 2. The Court has no doubt that the Fourth Circuit was remanding the case for more fact finding and that the Bankruptcy Court had discretion to approve or invalidate the releases after completing its

B. The Bankruptcy Court Did Not Err in Concluding that the Release Provisions Were Not Essential to the Reorganization Plan

NHF argues that the Bankruptcy Court erred in concluding that the Release Provisions were not essential to the Reorganization Plan. NHF's position is based on two contentions: (1) absent the Release Provisions, NHF's indemnification obligations, found in its bylaws, would cause a reorganized NHF to fail; and (2) the directors and officers would refuse to serve if the Release Provisions were severed from the Reorganization Plan.[8] In support of these contentions, NHF argues that the Bankruptcy Court "acknowledged record facts that established this factor [that the Releases were essential], but improperly disregarded such facts in favor of speculation made by a law student in a 20-year old note and its own unfounded assumptions."[9] Appellant

---

duties. *See Behrmann*, 663 F.3d at 7113 (remanding "to allow the bankruptcy court—if the record permits it—to set forth specific factual findings supporting its conclusions.").

[8] The Reorganization Plan can survive the invalidation of the Release Provisions. Section 12.2 provides:

> Severability. Should any provision of this Plan be determined to be unenforceable, that determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or impaired in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Reorganization Plan at 23.

[9] Elsewhere, in connection with its third grounds for appeal based on the *Dow Corning* factors, NFH argues that because of NHF's indemnification obligations, there is an "identity of interests" between NHF and the persons released under the Release Provisions and that this identity of interests, "standing alone," demonstrates the necessity of the Release Provisions. Appellant Br. at 26. This position is substantially identical to NHF's position that because of its indemnification obligations, the Release Provisions are "essential" to the Reorganization Plan; and the Court rejects its "identity of interests" position for the same reasons it rejects its claim that the Release Provisions are "essential." The Court notes in this regard that the Bankruptcy Court recognized such an identity of interests arising out of NHF's indemnity and advancement obligations to its officers and directors but also correctly concluded that this identity of interest was not sufficient in and of itself to justify those Release Provisions. *See In re Nat'l Heritage*, 478 B.R. at 227. As the Fourth Circuit made clear, identity of interests is only one factor under

Br. at 15. NHF claims that these "record facts" include (1) that absent the releases, NHF's 9000 donors "are likely to bring multiple suits against the Directors and Officers;" and (2) that because of NHF's indemnification obligations, these claims could "easily jeopardize NHF's continued operation." Appellant Br.at 15. NFH contends that these facts alone "should have shown that the 'essential' prong had been satisfied." *Id.* NHF claims that the Bankruptcy Court erred when it ignored these "facts" and instead concluded that NHF's officers and directors would continue to serve, even without the Releases, based, not on the record, but on opinions contained in a law review note and its own unsupported speculation concerning the effect of the Houk family ties shared among the officers and directors. *Id.* at 15-16. The Court finds these contentions without merit.[10]

First, NFH overstates the record evidence as to the likelihood of lawsuits and the effects of such lawsuits on NFH. In this regard, there is no evidence in the record that NHF's officers and directors are facing or would, in fact, face claims that would trigger indemnification obligations on the part of NHF so onerous as to threaten the prospects of a successful reorganization. For example, there is nothing in the record concerning how many claimants, if any, have threatened litigation, what those potential claims might be and the financial magnitude of any such claims, to what extent any claims would be time barred, the litigation costs

---

*Dow Corning*, and is not dispositive in this case. *See Behrmann*, 663 F.3d at 712 ("[W]e are satisfied to leave to a bankruptcy court the determination of which factors may be relevant in a specific case. . . . ."). Again, this record does not place NHF in a position relative to its officers and directors any different from any corporation with a duty to indemnify its officers and directors. NHF has clearly failed to demonstrate any "unusual circumstances" that would justify the Release Provisions. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005).

[10] NHF also contends that the Bankruptcy Court improperly considered evidence that undercuts its position. In essence, this is a variation of its position on the scope of the mandate and the Court rejects it for the same reasons that it rejects NHF's position in that regard.

associated with such claims, the insurance coverage available for such claims, or how any such claims might impact continued operations. Moreover, NHF's unsupported contention that its reorganization would fail without the Release Provisions is effectively foreclosed by the Fourth Circuit's opinion:

> NHF has also failed to demonstrate how the relief requested by [NHF] would jeopardize the success of the Confirmed Plan. On this point, NHF argues that it could incur substantial litigation costs in defending its directors and officers against claims brought by dissatisfied donors that would threaten its ability to continue operations. However, here NHF merely parrots certain conclusions of the bankruptcy court, for example, that the Release Provisions are "important to the overall objectives of the Plan," and we have already noted that such conclusions lack adequate factual support. We also note that the Confirmed Plan expressly provides that any clause may be severed should it be determined to be unenforceable, which suggests that the plan would remain viable absent the Release provisions.

*Behrmann,* 636 F.3d at 713-14. Despite this glaring defect that the Fourth Circuit identified in the factual record, and its obvious centrality to the appropriateness *vel non* of the Release Provisions, NHF failed to offer on remand any additional evidentiary support for its position. Rather, NHF relies exclusively, as it did on appeal to the Fourth Circuit, on the argument that the Release Provisions are warranted based on the sheer number of donors who theoretically might bring claims. However, the Court finds and concludes that, without more information on the actual amount and nature of potential claims, the number of donors alone provides insufficient factual support for the Court to conclude the Release Provisions are "essential." *See Behrmann,* 663 F.3d at 713. There is simply nothing in the record that would distinguish NHF's concerns over its indemnification obligations to its officers and directors from those of any company in bankruptcy. *See In re SL Liquidating, Inc.,* 428 B.R. 799, 803 (Bankr. S.D. Ohio 2010) (finding insufficient support for releases, where the proffered justification "could apply just as well to any number of reorganizing debtors" and that "it is not unusual for there to exist a claim against a corporation's directors and officers, when the corporation has filed for bankruptcy. Were we to

13

adopt the Debtor's position, requests for non-consensual third party releases may become the norm.").

Nor is there sufficient factual support for the claim that without the Releases, the corporate officers and directors would be unwilling to serve. There was no evidence at the confirmation hearing that any officer or director had made the decision not to serve without the Release Provisions. The only evidence concerning the officers and directors' actual intentions was the testimony of one of the Houk family members, Janet Ridgely, that the officers and directors were concerned about the possibility of litigation against them and that they *might* be unwilling to serve absent the Release Provisions. However, she also testified that no officers or directors, almost all of whom are members of the Houk family, stated an intention to leave. Nor was any evidence presented supporting NHF's assertion that the officers and directors "plainly have other options" for employment, or to explain how resignation would somehow shield them from liability already incurred.[11] NFH's contention is also at odds with NFH's approval of the Reorganization Plan, which continues even were the Release Provisions severed, *see* Reorganization Plan at 23; and also NFH's position that the officers and directors have contributed substantial assets because they intend to continue providing services. *See* Appellant Br. at 39. As with its other contentions, the record does not establish that NHF's exposure with respect to potential claims is "unique," and its concerns over the retention of its officers and directors "could apply just as well to any number of reorganizing debtors." *Behrmann,* 663 F.3d

---

[11] NHF contends that "[t]he remand court relied on opinions in a law review note to trump undisputed record facts." Appellant Br. at 35. In reality, the Bankruptcy Court merely referenced that article as characterizing a position such as that taken by NHF as the "throw in the towel" theory. *See* Peter M. Boyle, Non Debtor Liability in Chapter 11: Validity of Third-Party Discharge in Bankruptcy, 61 Fordham L. Rev. 421, 447 (1992). It is clear from the record that the Bankruptcy Court drew its own conclusions based on the evidence before it.

at 713. For all of these reasons, the record is insufficient to demonstrate that the Release

Provisions were essential to NHF's efforts to reorganize.[12]

C. The Bankruptcy Court Did Not Err as to the Remaining *Dow Corning* Factors

NFH finally contends that in addition to its conclusion that the Release Provisions were

not essential to the Reorganization Plan, the Bankruptcy Court erred in applying the *Dow*

*Corning* factors. With respect to those factors, the Bankruptcy Court summarized as follows its

detailed findings of fact pertaining to the appropriateness of including the Release Provisions in

the Reorganization Plan:

> We are, then faced with the situation where (and the Court so finds): (a) the officers and
> directors are potentially exposed to substantial liabilities, for which they will be entitled
> to assert claims for indemnification against the Debtor for any damages that might be
> awarded to the donors, and the advancement of fees, thereby putting the feasibility of the
> reorganization potentially at risk; (b) it is unlikely that the officers and directors will
> leave *en masse,* solely because of the assertion of Donor claims; (c) the officers and
> directors are not contributing anything financially toward the reorganization; (d) there is
> no support from the affected Donor class of disallowed claims; (e) there is no mechanism
> within the Plan for Donors to be paid anything; and (f) there is no ability for the Donors
> to recover anything outside of the Plan if the Plan Release Provisions remain in place.

*Id.* at 232. Based on these findings, the Bankruptcy Court then concluded:

> The single factor in favor of the Release Provisions – the potential for an obligation to
> indemnify the officers and directors – cannot by itself justify the Release Provisions. If it
> did, then third-party releases would be the norm, not the exception. This would
> contravene the now universally accepted proposition that third party releases are to be
> granted only in exceptional cases. The Court concludes on balance, the Release
> Provisions are not justified under the circumstances of this case.

*Id.* (internal citations omitted). NFH claims that these findings and conclusions "misconstrued

both the record facts and the applicable law, leading to an erroneous result." Appellant Br. at 16.

---

[12] Given the Court's conclusion with respect to the scope of the Fourth Circuit mandate, the
Court also concludes that the Bankruptcy Court did not improperly consider evidence outside of
the Fourth Circuit's mandate when it determined that the Release Provisions were not essential to
reorganization.

More specifically, NHF claims that these findings and conclusions run afoul of the *Dow Corning* factors on which they are based.[13]

The Court has reviewed the mixed issues of fact and law presented by these remaining challenges and finds that the Bankruptcy Court's findings of fact are not clearly erroneous; indeed, those findings are fully supported by the record. The Court also concludes that after applying *de novo* the applicable law to the facts, as found by the Bankruptcy Court, the Bankruptcy Court's decision was correct.

> i. Whether the Nondebtors have Contributed Substantial Assets to the Reorganization by their Willingness to Serve.[14]

NHF argues that the Release Provisions are warranted in this case because the officers and directors have contributed substantial assets to the reorganization in the form of their agreement to continue serving in their positions. Appellant Br. at 39. The Bankruptcy Court correctly held that such a contribution was inadequate to warrant the Release Provisions.

In this case, unlike cases cited by NHF,[15] the nondebtors to be released have given only an unenforceable promise for future services and there is nothing in this record that allowed the Bankruptcy Court to find, as required, exceptional circumstances based on "facts that support a

---

[13] The Court has previously discussed the record as it pertains to whether the indemnification obligations make the Release Provisions essential, including the impact on the Reorganization Plan and the willingness of the officers and directors to continue to serve without the Release Provisions.

[14] The factual findings reflected in sub-paragraphs (a) and (b) of the Bankruptcy Court's summary quoted above have been discussed previously.

[15] For example, in *Dow Corning,* the nondebtors contributed over $2 billion in equity in exchange for an injunction. In contrast, the nondebtors in this case have not contributed any "substantial asset," only an unenforceable pledge to continue services. Similarly, in *In re Mercedes Homes,* 431 B.R. 869, 881 (Bankr. S.D. Fla. 2009), also heavily relied upon by NHF, the directors and officers to be released, in addition to their continuing services, had waived certain of their claims, which allowed a $6 million distribution to unsecured creditors. *Id.* at 881.

conclusion that the released parties will make significant contributions to the reorganization

pursuant to the Plan." *Dow Corning*, 280 F.3d at 659; *see also Gillman*, 203 F.3d at 212-13.

The Bankruptcy Court's conclusion that this factor weighs against approval of the Release

Provisions is further supported by *Norwest Bank Worthington v. Ahlers*, 458 U.S. 197 (1988),

where the Supreme Court held that the promise of future labor did not constitute a monetary

contribution to a reorganization.[16] *Id.* at 202-04 (the "promise of future service is intangible,

inalienable, and in all likelihood, unenforceable. It has no place in the asset column of the

balance sheet of the new entity.") (citations and internal quotation marks omitted). Other courts

have also concluded that merely continuing to perform duties for pay does not constitute a

contribution under the *Dow Corning* factors. *See In re SL Liquidating*, 428 B .R. at 804 (Bankr.

S.D. Ohio 2010); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (holding that even

"meaningful" work contribution is not justification for a release).

ii. Whether the Impacted Class Voted Overwhelmingly to Accept the Reorganization
Plan

One consideration under *Dow Corning* is whether "[t]he impacted class, or classes, has

overwhelmingly voted to accept the plan." *Dow Corning*, 280 F.3d at 658. NFH contends that

the Bankruptcy Court failed to correctly apply this factor to the record in this case since all but

one of the Annuitants, the only "impaired" class, voted to approve the Reorganization Plan. The

Bankruptcy Court correctly concluded that this approval by the Annuitants did not favor the

Release Provisions in light of the absence of any actual vote on the Reorganization Plan by the

donors, which was an "impacted," although not an "impaired" class. The Court concludes, as did

the Bankruptcy Court, that the term "impacted" is not limited to "impaired" classes under 11

---

[16] The Supreme Court considered "sweat equity" contributions for bankruptcy purposes other
than as justification for nondebtor release provisions specifically. Nevertheless, the Court finds
the Supreme Court's reasoning and conclusions persuasive with respect to the justifications for
release provisions.

U.S.C. § 1122 and that the donors, as Class III(C) claimants, were "impacted" claimants, who did not, in fact, affirmatively approve the Reorganization Plan; and this factor weighs against approving the Release Provisions.[17]

### iii. Whether the Plan Provides a Mechanism to Pay for All, or Substantially All of the Class or Classes Affected by the Injunction

Another factor under *Dow Corning* is whether "[t]he plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction." *Dow Corning,* 280 F.3d at 658. This consideration has typically been used to justify release provisions where the reorganization plan includes a mechanism such as a dedicated settlement fund to pay the claims, even precluded claims, of those affected by an injunction. *See id; see also In re A.H. Robins Co.,* 880 F.2d 694 at 700-01 (4th Cir. 1989) (upholding a reorganization plan that provided for payment of claims adversely impacted by the release, even if those claims had not been timely filed). NHF argues that this factor weighs in favor of the Release Provisions because the Reorganization Plan established sufficient means to pay all of the *allowed* claims in full; and for that reason, there is no need to preserve the claims of donors against non-debtors to be released under the Release Provisions. Appellant Br. at 41-42. The Bankruptcy Court correctly

---

[17] Class III creditors consisted of the following three subclasses: (a) the claim of the Mancillas family, who had obtained the $6 million Texas state court judgment that precipitated the bankruptcy (Class III(A)); (b) the unsecured claims of the Annuitants, which under the Plan were to be paid 85% of the pre- and post-petition amounts due (Class III(B)); and (c) the general unsecured claims of the Donors whose claims, to the extent allowed by the Bankruptcy Court, would be paid in full with 4% interest (Class III(C)). By statute, a Donor, by virtue of his "unimpaired" status, was deemed conclusively to have accepted the Plan without any opportunity or right to vote on it. *See* 11 U.S.C. § 1126(f). Nevertheless, the Bankruptcy Court held that Donors were actually *impacted* by the Release Provisions since the proposed Release Provisions affected their ability to pursue claims against the released parties, even claims that were ultimately disallowed; and a Donor's claim would not be paid under the Plan unless that Donor prevailed in further Proof of Claims hearings over NHF's objections. *In re Nat'l Heritage,* 478 B.R. at 230-31; *see also Dow Corning,* 280 F.3d at 658 (defining "impacted" as those "classes affected by the injunction.")

concluded, however, that this factor did not weigh in favor of the Release Provisions because "[t]he Plan does not provide any mechanism for the payment of the claims affected by the Release Provisions, specifically the Donor claims." *In re Nat'l Heritage*, 748 B.R. at 232. The Court likewise concludes *de novo* that without such a mechanism, this factor does not weigh in favor of the Release Provisions. *See In re Metromedia Fiber Network, Inc.* 416 F.3d at 142 ("Courts have approved nondebtor releases when... the enjoined claims were 'channeled' to a settlement fund rather than extinguished.") (citing *In re A.H. Robins, Co.,* 800 F.2d at 701).

### iv. Whether the Plan Provides an Opportunity for those Claimants who Choose not to Settle to Recover in Full

The sixth *Dow Corning* factor is whether "[t]he plan provides an opportunity for those claimants who choose not to settle to recover in full." *Dow Corning,* 280 F.3d at 658. NHF argues that this factor weighs in favor of the Release Provisions because had the Donors timely filed claims against NHF and overcome NHF's objections to all such claims, the Reorganization Plan provided the donors with a sufficient opportunity for payment in full. Appellant Br. at 42-43. The Bankruptcy Court essentially concluded, as it did with respect to the *Dow Corning* factor based on a settlement fund, that the Reorganization Plan's structure made this factor irrelevant. In this regard, the Bankruptcy Court found and concluded that the Reorganization Plan "does not provide any opportunity for the [non-settling] Donors to recover. In fact, the very purpose of the Release Provisions is to protect the Released Parties from any claims by the Donors, thereby precluding any recovery from third party sources outside of the Plan." *In re Nat'l Heritage*, 748 B.R. at 232. There is nothing in this Plan comparable to the plan in *A.H. Robbins* where claimants who opted out of a settlement funded by the debtor's insurer were barred from pursuing claims against the debtor's directors and officers, but retained their rights to recover outside of the reorganization plan by pursuing suits against the insurer. 880 F.2d at

700-01. In contrast, this Reorganization Plan is not funded by an insurer or any other third party and the donors are not offered any source of payment outside of the Reorganization Plan. In other words, there is no means to recover outside of the Plan. The Bankruptcy Court was correct in concluding that this factor weighed against approval of the Release Provisions.

## IV. CONCLUSION

For the above reasons, the Bankruptcy Court's findings of fact are not clearly erroneous and upon *de novo* review of its decision based on those facts, the Court concludes that the Release Provisions are not warranted as part of the Reorganization Plan. For these reasons, the decision of the Bankruptcy Court rejecting the Release Provisions as part of the Reorganization Plan is AFFIRMED.

An appropriate order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 3, 2013